IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **MONALETHA CLINCY**, *Plaintiff*, v. **PACKAGING CORPORATION OF AMERICA, et al.**, *Defendants*. | Cause No. 3:23-CV-547-CWR-LGI |

### ORDER

Before the Court is a motion to dismiss filed by Packaging Corporation of America, William McKenzie, James Bailey, and Brenda Silas (together, "Defendants"). Docket No. 9. The matter is fully briefed and ready for adjudication. Upon review, the motion will be granted in part and denied in part.

**I.      Factual and Procedural History**

Plaintiff Monaletha Clincy was hired as a supervisor by Defendant Packaging Corporation of America ("PCA") in July 2019. Clincy alleges that while employed at PCA, she was sexually harassed by her co-worker, Defendant William McKenzie. Clincy reported McKenzie's conduct to supervisors Defendants James Bailey and Brenda Silas, who in turn told McKenzie about the allegations. McKenzie then confronted and threatened Clincy, telling her that he "was going to get back at [her]" for making the report. Docket No. 1-1 at 3.

Clincy alleges that Bailey and Silas began to retaliate against her by "altering her clock-in times, transferring her to different shifts, and [taking] other actions that left [her]

feeling hopeless and aggrieved." Docket No. 1 at ¶ 18. Clincy says that by altering her clock-in times, Defendants took "up to 30 minutes of [her] time daily." Docket No. 1-1 at 3. She also claims that she noticed Defendants' retaliatory actions "immediately after" she reported McKenzie's sexual misconduct. Docket No. 1 at ¶ 22.

PCA fired Clincy on December 16, 2021. Her termination letter stated that she was fired due to an "overall condition" of her "work environment not being clean." Docket No. 1-1 at 3. Clincy, however, believes her "employment was terminated because she reported . . . McKenzie's conduct." Docket No. 1 at ¶ 56. She had never been "written up" or "disciplined" during her time at PCA.

Clincy reported these incidents to the EEOC in 2022, then filed this action against PCA, McKenzie, Bailey, and Silas in 2023. In her complaint, she asserted claims of civil assault, civil battery, and intentional infliction of emotional distress (together, the "Intentional Tort claims"); negligent infliction of emotional distress, gross negligence, and negligent hiring, retention, supervision, and control (together, the "Negligence claims"); and sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964.

Defendants filed a joint motion to dismiss on October 20, 2023. They argue that Clincy's Intentional Tort claims are time-barred, her Negligence claims are precluded by the Mississippi Worker's Compensation Act ("MWCA"), and her Title VII claims fail to establish a plausible claim against PCA for sexual harassment and retaliation.

Clincy responded that her Intentional Tort claims should be equitably tolled, that her Negligence claims are not barred by the MWCA because Bailey and Silas did not act within

the scope of their employment, and that she had alleged sufficient facts to state her claims under Title VII. She added a request for leave to amend her complaint.[1]

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may assert a defense on the basis of a plaintiff's "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A satisfactory complaint contains a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677–78. The complaint need not have "detailed factual allegations," but requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citation omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    Discussion

### A.     Intentional Tort Claims

Defendants first argue that Clincy's Intentional Tort claims are time-barred by a one-year statute of limitations. Clincy concedes this point but argues that the limitations period should be equitably tolled because "the Fifth Circuit has not concluded that the EEOC does not toll state law statute of limitations for state law tort claims arising out of the same factual circumstances." Docket No. 16 at 11.

---

[1] In her response, Clincy suggests a third claim under Title VII—that "PCA mistreated and terminated her because she was a female who reported sexual harassment." Docket No. 16 at 5. Clincy's attempt to assert a sex discrimination claim fails for two reasons. First, it is presented—for the first time—in her response. Second, it is unclear how the sex discrimination claim differs from Clincy's alleged sexual harassment and retaliation claims.

3

Clincy offers no case law to support her position. Defendants, on the other hand, cite to sister circuits who addressed the issue. Each relied on the Supreme Court's decision in *Johnson v. Railway Express Agency, Inc.*, which held that the statute of limitations for a § 1981 claim was not tolled pending the EEOC's action on a related charge of discrimination. 421 U.S. 465–66 (1975).

The Fifth Circuit has not directly addressed the question, but its equitable tolling and equitable estoppel jurisprudence are instructive. Those doctrines "remain available to . . . plaintiffs who, through no fault of their own, might otherwise be barred from bringing a claim by operation of a statute of limitations." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 368 (5th Cir. 2003). Equitable tolling in particular "is to be applied sparingly." *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011) (citation omitted). Its hallmark is the plaintiff's exercise of "due diligence." *Id.*

Here, Clincy has not demonstrated the kind of "sufficiently rare circumstances," *id.* at 713, that warrant tolling her Intentional Tort claims. Therefore, these claims are dismissed as untimely.

B.   **Negligence Claims**

Defendants argue that Clincy's Negligence claims are precluded by the MWCA. Clincy contests this, stating that the MWCA does not apply because Bailey and Silas were not acting within the scope of their employment when they committed the alleged acts.[2]

---

[2] This part of Clincy's response also names McKenzie as someone who might be liable to her for her Negligence claims. The Court notes, however, that Clincy did not assert any negligence claims against McKenzie in her complaint.

The MWCA provides that worker's compensation is the "exclusive" state-law remedy for an employee who suffers an injury during the course and scope of their employment. Miss. Code Ann. § 71-3-9(1). The Act bars state tort claims grounded in negligence, and extends to torts committed by coworkers and supervisory personnel. *Griffin v. Futorian Corp.*, 533 So. 2d 461, 464 (Miss. 1988); *see also Benoit v. Bates*, No. 1:08-CV-391-LG-RHW, 2010 WL 4637672, at *4 (S.D. Miss. Nov. 8, 2010).

To escape the MCWA's exclusive remedy provision, an injured employee must prove that their injury was "caused by the willful act of [a coworker or supervisor] acting in the course and scope of his employment and in the furtherance of his employer's business." *Miller v. McRae's, Inc.*, 444 So. 2d 368, 371 (Miss. 1984). "In order for a willful tort to be outside the exclusivity of the MWCA, the coworker or supervisor must act with actual intent to injure the employee. It is not enough to destroy the immunity that the conduct leading to the injury consists of aggravated negligence or willfully failing to furnish a safe place to work." *Griffin*, 533 So. 2d at 464 (cleaned up).

The Court finds the MWCA applicable here. Clincy has not alleged that Bailey and Silas acted with an actual intent to injure her. Therefore, Clincy's Negligence claims are dismissed.

C.   **Title VII Claims**

Clincy advances two kinds of Title VII claims against PCA.[3] Each is discussed in turn.

---

[3] Although Clincy has also asserted Title VII claims against McKenzie, Bailey, and Silas, Defendants correctly observe that individuals cannot be held liable under Title VII in either their individual or official capacities. *See Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003). Clincy does not respond to this argument. The Court, therefore, dismisses her Title VII claims against McKenzie, Bailey, and Silas.

1. <u>Sexual Harassment</u>

Generally speaking, there are two types of sexual harassment claims under Title VII: (1) quid pro quo harassment, in which a supervisor demands sexual favors as a condition for job benefits, and (2) harassment that creates an offensive or hostile work environment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998); *Cerda v. Blue Cube Operations, L.L.C.*, 95 F.4th 996, 1003 (5th Cir. 2024). This case involves the latter.

To state a claim of hostile work environment, Clincy must allege that: (1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take remedial action. *See Saketkoo v. Administrators of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022). Defendants argue that she has failed to sufficiently allege elements three and four of this standard.

First, Defendants argue that Clincy failed to allege how the harassment she experienced "related to her sex." Docket No. 10 at 2. Specifically, Defendants argue that Clincy did not allege any facts to indicate that "McKenzie's alleged conduct or statements were sexual in nature." *Id.* at 8.

The Court disagrees. As the Supreme Court has explained, sexual harassment "include[s] 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)). Clincy claims that she "never had any type of relationship or contact (outside of the normal employment environment) with" McKenzie and "did not invite . . . McKenzie to brush up against her and make inappropriate comments to her."

6

Docket No. 1 at ¶¶ 20, 37. Clincy has alleged sexual harassment based on sex. And, if there was any doubt about this, Clincy's response brief elaborates to make crystal clear that "this unwelcomed sexual harassment included sexual advances, requests for sexual favors and other unwelcomed, unsolicited and undesirable conduct that" she found offensive. Docket No. 16 at 8.

Defendants also argue that Clincy failed to allege how the harassment affected a term, condition, or privilege of her employment. They say she did not allege how "the behavior was severe or pervasive enough to be actionable." Docket No. 10 at 8.

Courts evaluate whether an environment is hostile by analyzing the totality of circumstances, "focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) (citation omitted). "An egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment while frequent incidents of harassment, though not severe, can reach the level of pervasive." *Lauderdale v. Texas Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (cleaned up).

In our case, Clincy alleges that McKenzie's sexual advances, requests for sexual favors, and unwelcomed, unsolicited, and undesirable conduct affected a condition and privilege of her employment. *See* Docket No. 16 at 9. She explains that Bailey and Silas contributed to this harassment by altering her clock-in times and transferring her to different work shifts after she reported McKenzie's conduct. *Id.* Clincy claims that "[t]hese incidents were not isolated and together, . . . rose to the level of an abusive work environment." *Id.*

7

"[I]n the Title VII context, the Fifth Circuit has stressed that 'a plaintiff need not need make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim.'" *Golden v. McDonough*, No. 1:21-CV-129-TBM-RHWR, 2022 WL 1714485, at *4 (S.D. Miss. Mar. 29, 2022) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). At this stage, Clincy is not required to demonstrate the ultimate success of her claim, but rather to plead facts sufficient to support a reasonable inference of the elements of her claim. *See id.*; *see also Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023).

When considered together and viewed in the light most favorable to the plaintiff, Clincy has pled factual content to allow the Court to draw a reasonable inference that PCA is liable for the misconduct alleged. *See Ashcroft*, 556 U.S. at 678. If Clincy's "claim is indeed unmeritorious, as [D]efendant[s] contend[], such an argument would be more appropriately raised after some discovery is completed and through the use of a summary judgment motion." *Golden*, 2022 WL 1714485, at *7 (citation omitted).

2. <u>Retaliation</u>

The Court now turns to Clincy's retaliation claim. To state a claim of retaliation under Title VII, Clincy must allege that: (1) she engaged in a protected activity, (2) she was subjected to a materially adverse action, and (3) there is a causal connection between the protected activity and materially adverse action. *See Norsworthy*, 70 F.4th at 336. In this context, "materially adverse" means an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (cleaned up).

Defendants first argue that Clincy fails to allege how the confrontation, threats, adjustments to her time clock, and shift assignments were material. *See* Docket No. 10 at 9–10. Then, while conceding that "the termination of Clincy's employment plainly constitutes adverse employment action," Defendants argue that Clincy fails to allege "specific facts sufficient to establish any casual connection between her alleged protected activity and her termination." *Id*.

The Court is unpersuaded. The pre-termination acts that Clincy experienced—the threats, wage theft, and (perhaps) worse shift assignments—could plausibly have dissuaded a reasonable worker from making or supporting a charge of discrimination. And termination, of course, squarely hits the mark as materially adverse.

Clincy has also set forth how her protected activity caused the materially adverse actions. After making her report to Bailey and Silas, Clincy was confronted and directly threatened by McKenzie, who told her he "was going to get back at [her]." Docket No. 1-1 at 3. Bailey and Silas then altered Clincy's clock-in times and transferred her to different shifts. Docket No. 1 at ¶ 18. These actions, Clincy explains, occurred "immediately after" she reported McKenzie's misconduct. *Id.* at ¶ 22. She was then terminated. The Court finds that Clincy has amply alleged a causal connection between her report and the materially adverse action. The motion to dismiss Clincy's retaliation claim is denied.

D.     **Leave to Amend**

In her response to Defendants' motion to dismiss, Clincy requests leave to amend her complaint.[4] Docket No. 16 at 1. She wants to add more detailed timelines and the Defendants'

---

[4] Clincy also requests a hearing on Defendants' motion to dismiss. *See* Docket No. 16 at 2.

specific statements and actions. *See id.* at 2. Defendants respond that Clincy did not comply with the Local Rules in requesting leave, failed to amend her complaint as a matter of course under Fed. R. Civ. P. 15 (a), and urge on the merits that an "amendment would be futile." Docket No. 18 at 7–9.

The Federal Rules of Civil Procedure provide that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is not unusual for plaintiffs who oppose a motion to dismiss to request leave to amend in the event the motion is granted." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Further, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Id.*

To determine whether leave to amend is warranted, courts consider: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Additionally, "failure to specify what [an] amended complaint would say and noncompliance with the local rules" can justify a court's refusal of leave to amend. *See Young v. United States Postal Serv.*, 620 F. App'x 241, 246 (5th Cir. 2015).

Here, Clincy has not properly moved to amend. *See* Local Rules 7(b)(3)(C), 7(b)(2), and 7(b)(10). Additionally, the Court agrees with Defendants that her suggested amendments would be futile. Even with the new factual allegations she proposes, Clincy's Intentional Tort

claims would still be time-barred and her Negligence claims would be precluded by the MWCA, as explained above. As such, leave to amend is denied.

## IV. Conclusion

The motion to dismiss is granted in part and denied in part. Within seven days, the parties shall contact the chambers of the Magistrate Judge to schedule a Telephonic Case Management Conference.

**SO ORDERED**, this the 26th day of September, 2024.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE